529 So.2d 1267 (1988)
Maxine M. BRENT, Petitioner,
v.
George A. SMATHERS, Clovis A. McKenzie, Alicia Lammerts and James F. Breuil, Jr., Respondents.
No. 88-1484.
District Court of Appeal of Florida, Third District.
August 23, 1988.
*1268 McDermott, Will & Emery and Steven E. Siff, Miami, for petitioner.
Kelley, Drye & Warren including Smathers & Thompson and Gregory M. Cesarano and Jon Chassen, Miami, for respondents.
Before SCHWARTZ, C.J., and BASKIN and FERGUSON, JJ.
PER CURIAM.
Maxine Brent, the petitioner, and George Smathers, the respondent, were personal representatives for the estate of Brent's deceased husband, James F. Breuil, Sr. and were co-trustees of the Breuil Master Trust. The other respondents, Lammerts and James Breuil, Jr., are beneficiaries of the trust. Brent and Smathers, as personal representatives and co-trustees, were represented by Smathers' law firm, Smathers and Thompson.
Brent commenced this action against Smathers and McKenzie alleging that they breached a fiduciary duty by improperly administering the estate and trust, and that the breach resulted in an increase in distributions to beneficiaries Breuil and Lammerts and a decrease in distributions to Brent. Kelly Drye and Warren and Smathers and Thompson filed answers on behalf of the defendants Lammerts, Breuil and Smathers.[1]
The case is before us on Brent's petition for certiorari review of the trial court's order denying her motion to disqualify the law firm. She contends that there is at the least an appearance of impropriety, as contemplated by rule 4-1.9 of the Rules Regulating the Florida Bar, for the law firm which represented her as a co-trustee, to now represent the co-trustee along with the other trust beneficiaries with whom her interests are adverse, in her action against those parties.
In response the law firm makes three arguments: (1) Brent failed to establish that Smathers has a material interest adverse to her position; (2) the rule against changing sides was not designed to protect the plaintiffs in new actions; and (3) relevant rules regulating the Florida Bar were designed to protect client confidences but here, because of the nature of the co-trustee relationship and because rule 4-1.6 permits a lawyer to use confidential information to defend against a charge, the law firm should be permitted to use information relating to Brent's representation in defense of Brent's claim.
Rule 4-1.9 governing conflicts of interest with former clients provides:
A lawyer who has formerly represented a client in a matter shall not thereafter:
(a) Represent another person in the same or a substantially related matter in which that person's interest are materially adverse to the interests of the former client unless the fo, rmer client consents after consultation; or
(b) Use information relating to the representation to the disadvantage of the former client except as rule 4-1.6 would permit with respect to a client or when the information has become generally known.
It is undisputed that Smathers and Thompson represented Brent in the administration of the estate and that they now represent co-administrator Smathers and the beneficiaries of that same trust and estate for which the firm represented Brent. The comment to rule 4-1.9 provides, *1269 "When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited." Here, the material adverse interest is all too obvious; Brent is suing Smathers for a money judgment based on a breach of a fiduciary duty. As to the law firm's second argument, the comment to rule 4-1.7 states that although questions involving conflicts of interest are primarily the responsibility of the lawyer undertaking the representation, opposing counsel may properly raise the issue, as is the case here.
We disagree with the contention that the Rules Regulating the Florida Bar are inapplicable to the peculiar facts of this case. Because Brent and Smathers were co-trustees, argues the law firm, there is no confidential information to protect as between the co-trustees regarding the administration of the trust, and since there is no confidential information, there is no need for the law firm to withdraw from representation. The respondents further contend that rule 4-1.6 permits the use of information relating to the representation of a client to the extent necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and client, and that the law firm intends to use information learned in its representation of Brent to defend her claim against Smathers.
Although lawyer-client confidentiality is an important factor in determining the appropriateness of representation, nowhere do the rules reflect that it is the sole determining factor. The fact that the plaintiff may have no expectation of confidentiality as between co-trustees is not dispositive of the issue.[2] Rule 4-1.9 also imposes upon the lawyer a duty of loyalty. See Lawyers Manual of Professional Conduct (BNA) § 51:202 (1987) (purpose of rule 4-1.9 is to prevent violations of lawyer's duty of loyalty as well as to prohibit the use of confidential information to the former client's disadvantage); Dobris, Ethical Problems for Lawyers upon Trust Terminations: Conflicts of Interest, 38 U.Miami L.Rev. 1, 31 (1983) ("The rule serves to preserve loyalty and avoid the misuse of confidential information."). "Loyalty is an essential element in the lawyer's relationship to a client." Rules Regulating the Florida Bar, rule 4-1.7 comment. "Common representation does not diminish the rights of each client in the lawyer-client relationship. Each has a right to loyal and diligent representation ... and the protection of rule 4-1.9... ." Rules Regulating the Florida Bar, rule 4-2.2 comment.
Commonly understood concepts of loyalty would seem at odds with permitting a law firm which previously represented one co-trustee, to defend the other co-trustee and beneficiaries in an action premised on a breach of confidence, and in the course of that defense to show that the complainant co-trustee acquiesced in the acts she now claims constituted the breach. A legitimate question of conflicting loyalty is raised by the law firm's representation of either Smathers or the other beneficiaries. The firm cannot justify its representation of the other beneficiaries under any ethical theory.[3]
As to the respondent Smathers we agree with the petitioners that rule 4-1.6, which permits a lawyer to reveal client confidences to establish a defense where the client *1270 claims wrongdoing by the lawyer, is not applicable because the law firm is not being accused of an impropriety. Although Mr. Smathers is a partner in the law firm, the firm both as an entity and in its function, is separate and distinct from Smathers, an individual co-trustee/co-personal representative. For the reason that there is clearly an appearance of impropriety  in the form of an undermining of the loyalty and trust upon which an attorney-client relationship is based  the respondent law firm is disqualified.
Certiorari is granted, and the order on review is quashed.
NOTES
[1] The firm of Kelly Drye and Warren are successors to the firm of Smathers and Thompson.
[2] The circumstances in this case are not as unique as the law firm contends. The general rule concerning common representation is that the lawyer must withdraw when conflicts between clients arise. See rule 4-2.2(c) governing the lawyer as intermediary. "Upon withdrawal, the lawyer shall not continue to represent any of the clients in the matter that was the subject of the intermediation." The comment to rule 4-2.2 provides: "With regard to the attorney-client privilege, the prevailing rule is that as between commonly represented clients the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications... ."
[3] Petitioners called to our attention at oral argument that the firm, indeed, has voluntarily withdrawn from representation of McKenzie, Lammerts and Breuil. The response to the petition for certiorari review is essentially an attempt to justify the continued representation of George Smathers.