# Third District Court of Appeal

## State of Florida

Opinion filed September 6, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-715
Lower Tribunal No. 16-8682
_____

## Jeremy Alters, et al.,
Petitioners,

vs.

## Alfredo Villoldo, et al.,
Respondents.

On Petition for Writ of Certiorari from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Young, Berman, Karpf & Gonzalez, P.A., and Andrew S. Berman, for petitioners.

Hall, Lamb, Hall & Leto, and Andrew C. Hall, Matthew P. Leto, and Vanessa Palacio, for respondents.

Before SUAREZ, LOGUE, and SCALES, JJ.

LOGUE, J.

In the case below, Jeremy Alters and his law firm are being sued by former clients. Alters moved to recuse the former clients' lawyers, Andrew Hall and his firm, because Hall had previously represented both Alters and Alters's former clients in unrelated matters. The trial court denied Alters's motion to recuse. Alters now petitions for a writ of certiorari to quash the order denying recusal. We deny the petition.

Facts

In 2008, Jeremy Alters was retained to represent two brothers, Gustavo and Alfredo Villoldo, in a lawsuit against Fidel Castro, the Republic of Cuba, and others for acts of terrorism. Alters obtained a judgment in state court for over $1.1 billion. The judgment, however, contained defects that made it uncollectable under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605. Upon learning of this problem, the Villoldos terminated Alters and retained Hall to correct the judgment. After the Villoldos hired Hall to correct Alters's work, Alters also hired Hall to represent him in a case in which two Argentine nationals were suing Alters for a share of the fees in a $410 million class action against Bank of America.

In mid-August of 2011, as he was about to obtain the corrected judgment in the Cuba case, and while still representing both parties in unrelated matters, Hall reminded a lawyer in Alters's law firm that no charging lien had yet been filed in the Cuba case. Alters testified, and the trial judge found, that Hall was not

2

representing Alters's law firm during that call. The Alters firm duly filed a charging lien later that month. On the same day, Hall obtained the corrected final judgment in the Cuba matter.

On June 20, 2013, in his capacity as the Villoldos's attorney, Hall sent Alters a letter disputing Alters's charging lien. "My client has instructed," Hall wrote, "that if you do not respond by the close of business tomorrow or should you insist on the Charging lien being enforced, the Villoldo Defendants will be compelled to vigorously resist that Charging Lien." At the time, it appears Hall was still representing Alters in the Bank of America class action dispute. On November 25, 2013, Hall wrote Alters saying he could no longer represent him in the Bank of America matter because Alters was holding itself out as co-counsel with Hall on the case involving the correction of the Cuba judgment despite having been previously terminated by the Villoldos.

On December 20, 2013, Alters entered into a settlement agreement with the Villoldos over the charging lien. The agreement provided that he be paid $175,000 immediately, and later, a percentage of the total amount collected once the relationship between the United States and Cuba normalized, Cuba was taken off the list of terrorist nations, and the State Department directed a payment be made. The agreement contained language indicating that certain conditions be completed

"through the efforts of Jeremy Alters" or his law firm. Hall did not represent either party in the dispute or the settlement.

On March 6, 2016, the Villoldos filed the complaint in the instant case against Alters seeking a declaratory judgment that Alters had no right to further compensation under the settlement agreement. Hall represented the Villoldos in that action. Alters and his firm responded by moving to recuse Hall. The trial court held an extensive evidentiary hearing, made detailed findings of fact, and denied the motion. Alters and his firm timely filed a petition for writ of certiorari.

## Analysis

"[D]isqualification of a party's lawyer in a civil case [is] a drastic remedy, one that must be employed only in limited circumstances." Gutierrez v. Rubio, 126 So. 3d 320, 321 (Fla. 3d DCA 2013). "Motions for disqualification are generally viewed with skepticism because disqualification of counsel impinges on a party's right to employ a lawyer of choice, and such motions are often interposed for tactical purposes." Alexander v. Tandem Staffing Sols., Inc., 881 So. 2d 607, 608-09 (Fla. 4th DCA 2004). "The standard of review for orders entered on motions to disqualify counsel is that of an abuse of discretion." Applied Dig. Sols., Inc. v. Vasa, 941 So. 2d 404, 408 (Fla. 4th DCA 2006).

The Florida Supreme Court has observed, "the Florida Rules of Professional Conduct provide the standard for determining whether counsel should be disqualified in a given case." Young v. Achenbauch, 136 So. 3d 575, 580 (Fla. 2014). Alters was not Hall's current client when Hall filed the complaint against Alters. He was Hall's former client. The current lawsuit was filed approximately two-and a-half years after Hall stopped representing Alters in the Bank of America class action fee dispute. For this reason, the trial court properly determined that Hall's responsibility to recuse himself in litigation against Alters is governed by Rule 4-1.9 of the Rules Regulating the Florida Bar, which deals with a lawyer's responsibility to former clients.

In pertinent part, Rule 4-1.9(a) provides that a lawyer who has formerly represented a client in a matter must not afterwards "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent." R. Regulating Fla. Bar 4-1.9(a). The application of this provision to the current dispute turns on the phrase "substantially related matter." The Florida Supreme Court has explained the meaning of "substantially related" in this context as follows:

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously

5

represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

In re Amendments to the Rules Regulating Fla. Bar, 933 So. 2d 417, 445 (Fla. 2006).

Hall's current representation of the Villoldos against Alters involves a dispute over the December 20, 2013 Cuba settlement agreement between Alters and the Villoldos. Hall's prior representation of Alters involved a dispute over fees in a class action against Bank of America. As Alters candidly admitted at trial and in his petition, there is no overlap between the two representations. They do not involve the same underlying dispute or transaction. In the current case, Hall will not be required to attack work that he performed for Alters. The two disputes are not substantially related. Indeed, they have absolutely nothing to do with each other. For this reason, Rule 4-1.9 does not preclude Hall from representing the Villoldos in the current matter.

Alters, however, responds by citing to our case, Brent v. Smathers, 529 So. 2d 1267, 1269 (Fla. 3d DCA 1988), as expanding the restrictions of Rule 4-1.9 to include a prohibition on bringing suit against a former client when to do so would

violate the principle of client loyalty and create an appearance of impropriety. We do not read that case so broadly.

Brent involved a petition for certiorari to recuse the law firm of Smathers and Thompson from representing George Smathers. Smathers and Maxine Brent had served as co-personal representatives of an estate and co-trustees of a related trust. The law firm represented both parties in that capacity. Brent then sued Smathers for breach of fiduciary duty. The law firm defended Smathers, and as a result, Brent moved to recuse the law firm. The trial court denied the motion, and Brent appealed.

This Court found that the law firm's defense of Smathers to Brent's claim of breach of fiduciary duty was substantially related to the firm's representation of Smathers and Brent as co-representatives and co-trustees: "It is undisputed that Smathers and Thompson represented Brent in the administration of the estate and that they now represent co-administrator Smathers and the beneficiaries of that same trust and estate for which the firm represented Brent." Id. at 1268. Accordingly, this Court held that Rule 4-1.9 required the law firm to recuse. Id.

The law firm in Brent, however, countered that the Rules Regulating the Florida Bar did not apply to that particular case as the Rules only apply when a client's expectation of confidentiality is at stake. Id. at 1269. The law firm

contended that there was no confidentially between Smathers and Brent as co-trustees. <u>Id.</u>

In response to this argument, this Court noted that the rules protected not only a client's right to confidentiality, but also a client's right to loyalty: "Although lawyer-client confidentiality is an important factor in determining the appropriateness of representation, nowhere do the rules reflect that it is the sole determining factor. The fact that the plaintiff may have no expectation of confidentiality as between co-trustees is not dispositive of the issue." <u>Id.</u>

Contrary to Alters's contention, this court's ruling in <u>Brent</u> did not modify Rule 4-1.9 by adding a new substantive prohibition which requires a lawyer to recuse in a lawsuit against a former client if the representation can be deemed "disloyal" or creates an "appearance of impropriety." Any such substantive change would have to be made by the Florida Supreme Court. The <u>Brent</u> decision merely explained why the Rules applied even if a client's reasonable expectation of confidentiality was not at stake.

For the reasons discussed above, we hold there was no departure from the essential requirements of law when the trial court exercised its discretion to deny Alters's motion to recuse.

Petition denied.